UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

HARRY EBERHART,

                   Plaintiff,               09 Civ. 4813

     -against-                    OPINION

KEVIN CROZIER, et al.,

                  Defendants.

------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12 1 10

        PRO SE

        Harry Eberhart
        95-A-8128
        Green Haven Correctional Facility
        P.O. Box 4000
        Stormville, NY 12582

        Attorneys for Defendants

        FRANK JOSEPH RUBINO, ESQ.
        Corporation Counsel, City of Yonkers
        City Hall, 40 South Broadway
        Yonkers, NY 10701

        ANDREW M. CUOMO
        Attorney General of the State of the New York
        120 Broadway
        24th Floor
        New York, NY 10271
        By:  Monica Anne Connell, Esq.

**Sweet, D.J.**

Defendants Kevin Crozier ("Crozier") and Erin M. O'Shea ("O'Shea") (together "City Defendants") and Donna J. Minort ("Minort" or "State Defendant") (collectively, the "Defendants") have moved to dismiss the complaint filed by Plaintiff Harry Eberhart ("Eberhart" or "Plaintiff") alleging that Defendants violated his First and Fourteenth Amendment rights. The alleged violations arose out of Defendants' involvement with Plaintiff's request under the New York Freedom of Information Law ("FOIL") for records relating to an incident at his home on December 1, 1993.

Based upon the conclusions set forth below, Defendants' motions are granted and Plaintiff's complaint is dismissed.

## I. PRIOR PROCEEDINGS

The complaint in this action (the "Complaint") was filed on May 22, 2009. City Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., on August 5, 2009. On September 10, 2009, State

Defendant moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. Defendants' motions were marked fully submitted on December 7, 2009.

## II. **PLAINTIFF'S COMPLAINT**

The following allegations, taken from the Complaint, are accepted as true for the purpose of resolving the motions to dismiss.

### A. **The Parties**

Plaintiff is a prisoner at Green Haven Correctional Facility, P.O. Box 4000, Stormville, New York, 12582.

Defendant Kevin Crozier is a Freedom of Information Officer and Associate Corporation Counsel for the Yonkers Police Department, City Hall, Department of Law, Room 300, Yonkers, New York, 10701-3883.

Defendant Erin O'Shea is an Associate Corporation Counsel for the Yonkers Police Department, City Hall, Department of Law, Room 300, Yonkers, New York, 10701-3883.

Defendant Donna Minort is the Chief Clerk of Westchester Supreme and County Courts, Westchester County Courthouse, 111 Dr. Martin Luther King, Jr. Blvd, White Plains, New York, 10601.

## B.    **Factual Background**

On or about December 1, 1993, two men, one of whom was Damon Slade ("Slade") attempted to push in the door to Plaintiff's home, located at 34 Prospect Street, Apartment B3-23, Yonkers, New York, and shoot him with a black 9 mm automatic handgun.  One of the assailants discharged the gun several times. Plaintiff was wounded in the left arm and a bullet went into the floor of Plaintiff's home.  Plaintiff was able to slam the door shut and the two men fled.  Compl. ¶¶ 15-16.

The Yonkers Police Department (the "YPD") was summoned.  When they arrived they retrieved the "spent bullet" from the floor of the apartment, and photographed

the bullet as well as an indentation on the door that
another bullet had made after striking Plaintiff.  The
photographer was a member of the YPD and the film from his
camera was taken to the YPD Criminal Identification Unit
for processing.  Plaintiff was taken to St. Joseph's
Hospital, treated for the gunshot wound in his left arm,
and released.  Compl. ¶¶ 17-20.

On or about December 10, 1993, Slade and three
accomplices accosted Plaintiff as he walked in a public
hallway outside his apartment.  Slade brandished the same
black 9 mm automatic handgun that Plaintiff recognized from
the earlier encounter.  Slade rushed at Plaintiff and after
a struggle, Plaintiff wrested the gun from Slade and
discharged it, killing Slade and one of the other
accomplices, and wounding the two remaining men. Compl. ¶¶
21-22.

On or about August 23, 1995, at Plaintiff's trial
for murder and attempted murder, Assistant District
Attorney Fitzmorris ("Fitzmorris") introduced into evidence
a ballistic examination request and report on a .38 caliber
spent bullet, which Plaintiff alleges was a different
bullet than the one actually found in the floor of his

apartment on December 1, 1993. Several days later, Senior Firearms Examiner for the Westchester Department of Public Safety Joseph Reich testified for the prosecution that he had been given the .38 caliber bullet on August 23 by Fitzmorris and that his examination demonstrated that the .38 caliber bullet could not be fired from a 9 mm handgun, only a revolver. He testified on cross-examination that he did not know where Fitzmorris got the bullet from, that no one in his office had examined it between its collection by the YPD and his inspection on August 23. He also testified that it was in a YPD evidence envelope bearing the date "12/1/1993." YPD Officer Kevin McGill ("McGill"), who had been called to Plaintiff's home on December 1, 1993 after the shooting, testified that he had found the spent .38 caliber bullet in Plaintiff's apartment that day, and that it had been photographed, taken to the precinct property clerk, and put it into evidence. Compl. ¶¶ 23-28.

On or about December 1, 1995, Plaintiff was convicted of two counts of murder in the second degree, and two counts of attempted murder in the second degree. Compl. ¶ 13.

On or about July 25, 2005, Plaintiff forwarded a general letter of request (the "July 25 letter") to the YPD asking for ballistic evidence collected from his apartment on December 1, 1993. On or about August 18, 2005, Defendant Crozier answered and rejected Plaintiff's request, claiming that while the Plaintiff's request was not made under the Freedom of Information Law ["FOIL"], his request would not fall within the ambit of the law in any event, given that the law "deals only with requests for records or documents held by a public entity." Compl. Ex. 10. He went on to write, "I have been informed that the City of Yonkers did not perform ballistic tests in this case and does not possess the 'evidence' you are seeking. The tests were performed by Westchester County." Id. He provided Plaintiff with contact information for the Westchester County Office of Police Ballistics.

On or about October 19, 2005, Plaintiff formally filed a FOIL request (the "October 19 request") directed at Crozier for the property clerk voucher for the bullet which McGill submitted in to evidence, and all property clerk logs, files, and reports pertaining to the incident at his home on December 1, 1993, photographs taken from the scene, any documents relating o evidence gathered by the YPD on

that day, "evidence transfer logs" (which he refers to in his motion papers as "chain of custody" records) and other documents from the YPD Forensic Science Laboratory. Compl. Ex. 11. He also renewed his request for ballistic evidence recovered by the YPD with regards to the December 1, 1993 incident. Crozier failed to respond to the request. Compl. ¶ 31.

On or about March 7, 2006, Plaintiff commenced an Article 78 proceeding in Westchester County Supreme Court, challenging Crozier's refusal to disclose the records sought. Compl. ¶ 33. Although the Complaint does not say so explicitly, it can be inferred that Plaintiff submitted his actual FOIL request for review by the court. This inference is supported by exhibits submitted with Plaintiff's motion papers, including his Response to Respondent's Verified Answer in the Supreme Court proceeding. See Pl.'s Opp'n to City Defs.' Mot. to Dismiss, Ex. A. On March 22, 2006, the court issued an Order to Show Cause as to why his request should be denied. On or about April 24, 2006, Crozier and O'Shea filed their response to the court's order, turning over twelve documents, including two black and white photographs of a 38 caliber spent bullet, as well as two black and white

photographs of the indentation of the front of Plaintiff's door which Plaintiff alleges was actually made by a 9 mm bullet. Compl. ¶ 34. One of the documents was a Property Clerk voucher regarding the spent bullet on which the Property Clerk voucher number was obscured. Compl. ¶ 35. Also included was Plaintiff's July 25 letter. Compl. Ex. 12. None of the records disclosed to Plaintiff included chain of custody of evidence records. Compl. ¶ 36. The state court denied Plaintiff's Article 78 petition.

On or about September 25, 2007, Plaintiff subpoenaed the Westchester County Supreme Court to provide the Appellate Division, Second Department, with the record of his original Article 78 case. According to the Complaint, State Defendant Minort, Clerk of Westchester County Supreme Court and County Courts, ("State Defendant" or "Minort") removed the October 19 request from the record to be reviewed on appeal. Compl. ¶ 39. On or about April 1, 2008, the Appellate Division denied his appeal as to the decision that he was not entitled to chain of custody evidence, but granted his petition insofar as he requested a copy of the Property Clerk voucher that clearly showed the voucher number. Compl. ¶ 40. On or about January 5, 2009, Plaintiff received from Crozier a copy of the

requested Property Clerk voucher (the "Voucher") which included the voucher number. The Voucher describes the submitted evidence simply as "spent bullet" with no mention of what kind of bullet was inventoried. Compl. Ex. 13.

## C.    **Allegations and Relief Sought**

Plaintiff alleges that Defendants' actions in refusing him access to the records and logs pertaining to the incident at his home on December 1, 1993, as he has requested, reflect their efforts intentionally to deny his right under the First Amendment to petition the courts for redress, as well as his rights to procedural and substantive due process under the Fourteenth Amendment.[1] Specifically, he alleges that the City Defendants, by submitting his July 25 letter in their Verified Answer to the Westchester County Supreme Court "intentionally misled the State Court by mischaracterizing and misrepresenting the nature of Plaintiff's [FOIL] petition" as being the July 25 letter rather than the more elaborate October 19 request, Compl. ¶ 37, intentionally obscuring that they are in possession of chain of custody documents which they

---

[1] Plaintiff also alleges that his due process right under the First Amendment were violated. There is no recognized cause of action under the First Amendment for a violation of due process.

9

continue to conceal.  He also alleges that State Defendant

omitted the FOIL request from the appellate record

intentionally, "in furtherance of the conspiracy" to

conceal evidence from him, "in bad faith and in

indifference" to Plaintiff's constitutional rights. Compl.

¶ 39.


        Plaintiff seeks a permanent injunction against

City Defendants "requiring them to provide plaintiff with

all of the chain of custody logs" and other documents in

connection with the December 1, 1993 incident, and a

declaratory judgment that he is entitled to the same.  He

also seeks compensatory and punitive damages against them.

Against State Defendant Minort Plaintiff seeks a

declaratory judgment "declaring her actions violative of

plaintiff's rights under the First, Fifth, and Fourteenth

Amendments to the United States Constitution."[2]  Compl. ¶ E.


## III. **THE LEGAL STANDARD**


### A.    Plaintiff Is Proceeding Pro Se

---

[2] The Fifth Amendment protects individuals against constitutional
violations by the federal government.  See Barron v. City of Baltimore,
32 U.S. 243 (1833).  Because Minort is an employee of New York State
and not the federal government, this cause of action is pled in error.

In addressing the present motion, the Court is
mindful that Eberhart is proceeding pro se and that his
submissions are held to "'less stringent standards than
formal pleadings drafted by lawyers.'" Hughes v. Rowe, 449
U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519,
520 (1972)). Courts are instructed to "read the pleadings
of a pro se plaintiff liberally and interpret them 'to
raise the strongest arguments they suggest.'" McPherson v.
Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation
omitted); see also Lerman v. Bd. of Elections in City of
New York, 232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most
pro se plaintiffs lack familiarity with the formalities of
pleading requirements, we must construe pro se complaints
liberally, applying a more flexible standard to evaluate
their sufficiency than we would when reviewing a complaint
submitted by counsel."). However, the courts will not
"excuse frivolous or vexatious filings by pro se
litigants," Iwachiw v. State Dep't of Motor Vehicles, 396
F.3d 525, 529 n.1 (2d Cir. 2005), and "pro se status 'does
not exempt a party from compliance with relevant rules of
procedural and substantive law.'" Triestman v. Fed. Bureau
of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting
Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

## B.   The Rule 12 Standard

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

However, while the pleading standard set forth in Rule 8 of the Fed. R. Civ. P. is a liberal one,

> the pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). Thus, a complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." Id. (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In meeting this "plausibility standard," the plaintiff must demonstrate more than a "sheer possibility" of unlawful action; pleading facts that are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557); see also Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131 (2d Cir. 2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotation marks and citations omitted)); Gavish v. Revlon, Inc., No. 00-CV-7291 (SHS), 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss.").

## IV. DISCUSSION

### A. Plaintiff Has Failed to State a Claim for Relief Against City Defendants Because the Conduct Alleged Cannot Be Said to Deprive Him of a Constitutional Right

Plaintiff accuses City Defendants of wrongfully withholding the chain of custody records for the ballistic evidence retrieved from his house on December 1, 1993, and deceiving the Article 78 court about his request for such records, thereby depriving him of access to the courts under the First Amendment and his due process rights under the Fourteenth Amendment.

In order to maintain an action against a state official for a violation of constitutional rights, Plaintiff must bring a claim pursuant to 42 U.S.C. § 1983. To survive dismissal of such a claim, Plaintiff must prove that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct complained of deprived a person of rights and privileges secured by the Constitution or laws of the United States. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Pitchell v. Callan, 13 F.3d 545, 546-47 (2d Cir. 1994); Hazan v. City of New York, No. 98-CV-1716 (LAP), 1999 WL 493352, at *2 (S.D.N.Y. July 12, 1999).

Plaintiff has not sufficiently alleged that the City Defendants' conduct deprived him of a constitutional

right.  The facts set forth in the Complaint imply that
Plaintiff submitted his FOIL request along with his Article
78 petition to the Westchester County Supreme Court and
that Defendants submitted a copy of Plaintiff's July 25
letter in their Verified Answer to that petition.
Plaintiff alleges, without explanation, that this was an
attempt to mislead the court about which request was at
issue, and that the court was in fact misled by the July 25
letter, even though the court also had before it the
October 19 request that the Plaintiff submitted.

        It does appear from its opinion that the Supreme
Court only considered the July 25 letter rather than
Plaintiff's October 19 request for specific records,
including chain of custody records.  In fact it makes no
mention of the October 19 request.  See Eberhart v.
Crozier, No. 09-CV-3827, 2006 WL 6092947 (N.Y. Sup. Ct.
July 6, 2006).[3]  Plaintiff does not allege grounds for
concluding that the mere presence of the July 25 letter
misled the court into thinking that the October 19 request
was somehow moot, nor factual assertions supporting his
theory that, in submitting the July 25 letter, City

---

[3] Nor does it appear that the Appellate Division considered his request
when affirming in part the lower court's ruling.  See Eberhart v.
Crozier, 50 A.D.3d 686 (N.Y. App. Div. 2008).

Defendants intended to mislead the court and deprive
Eberhart of meaningful access to review of his claim.  In
that they were responding to a FOIL request for records
related to the December 1, 1993 incident, it would seem
logical for the City Defendants to submit the July 25
letter as part of its file on the incident.  There is
nothing facially insidious about such a decision and
Plaintiff does not suggest grounds for thinking otherwise.
Even if the Supreme Court erroneously failed to consider
the October 19 request, Plaintiff's Complaint does not make
out a colorable claim against the City Defendants for
intentionally or inadvertently misleading the court.

        Plaintiff has not  sufficiently plead a claim
under § 1983 that City Defendants' conduct deprived him of
a constitutional right, and his claim against them is
dismissed.

### B. Plaintiff Does Not Have Standing to Bring A Claim for a Declaratory Judgment Against State Defendant Because He Has Not Demonstrated a Threat of Future Injury

        "[T]he irreducible constitutional minimum of
standing contains three elements": (1) there must be an
"injury in fact - an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there must be "a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

The conduct the unconstitutionality of which Plaintiff seeks declaration is State Defendant's alleged removal of his October 19 request from the original record of his Article 78 proceeding. However, Plaintiff alleges no basis for finding that there is a "real and immediate threat" that he will sustain that injury again. City of Los Angeles v. Lyons, 461 U.S. 95, 110 (1983). The United States Supreme Court has held that for declaratory or injunctive relief, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." Id. at 103. See Golden v. Zwickler, 394 U.S. 103, 109 (1969) (where it was "most unlikely" that Zwickler would again be subject to the statute to which he objected, no case or controversy of "'sufficient immediacy and reality'" existed to warrant a

declaratory judgment). Plaintiff does not assert that he will ever have dealings with State Defendant again, or that if he were to have dealings with her, that there are grounds for assuming she would again remove the FOIL request.[4]

Plaintiff's reliance on Porter v. Jones, 319 F.3d 483 (9th Cir. 2003), and Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006), does not lend support to his claim that declaratory relief is appropriate in this case. In Porter, the Ninth Circuit held that declaratory relief was appropriate in the case of online "vote-swappers" from the 2000 Presidential election who were seeking confirmation that their activities were legal, so as to protect the repetition of those activities in the 2004 election. 319 F.3d at 488-91. Lugosch refers to a case wherein newspaper reporters claimed an ongoing First Amendment injury for not being able to obtain access to documents filed under seal in a summary judgment motion while the motion was being held in abeyance. 435 F.3d at

[4] While the Complaint does state, with no grounding in fact, that Minort's removal of the FOIL request was "intentional" and "part of the conspiracy" against him, these assertions alone are not sufficient to create a plausible suggestion that such behavior would recur; they are precisely the kind of "bald assertions and conclusions of law [that] will not suffice" in meeting the necessary pleading standard. Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 131 (2d Cir. 2007).

110. The "separate and cognizable infringement of the First Amendment" which the plaintiffs claimed in that case cannot be analogized to the claimed infringement on the First Amendment right of access to courts in this case: in Lugosch, the motion continued to be held in abeyance; here, Minort's alleged removal of the FOIL request from the record is an action which has been completed.

Because Plaintiff has not demonstrated that his injury is "real and immediate" such that it could be redressed by a declaratory judgment in his favor, he lacks standing to bring his claims for violation of the First and Fourteenth Amendments against State Defendant. His claims against her are therefore dismissed.

While it does appear that Plaintiff's October 19 request may not have been properly considered in the state court proceedings, it is observed that Plaintiff is not barred from refiling with City Defendant Crozier a FOIL request directed specifically at the chain of custody records for evidence from the December 1, 1993 incident at his home, with the hopes of receiving the records he seeks, or a full review of the denial of that request in an Article 78 proceeding.

## Conclusion

In light of the foregoing authorities and conclusions, Defendants' motions are granted and the Complaint is dismissed.

It is so ordered.

New York, New York

January /8, 2010

ROBERT W. SWEET
U.S.D.J.